## UNITED STATES ex rel. KNAUER v. JORDAN, District Director of Immigration and Naturalization.

### No. 9164.

Circuit Court of Appeals, Seventh Circuit.

Nov. 30, 1946.

Rehearing Denied Dec. 20, 1946.

338

Theodore W. Miller, of Chicago, Ill., for appellant.

J. Albert Woll, U. S. Atty., and John Peter Lulinski, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and MINTON, Circuit Judges.

EVANS, Circuit Judge.

Petitioner, Knauer, appeals from a judgment dismissing his petition for habeas corpus wherein he sought to avoid deportation to Germany. His naturalization as a citizen of the United States had been previously revoked because of fraud practiced in its procurement. The District Court entered a judgment which vacated and set aside his naturalization decree. That decree was affirmed by this court, United States v. Knauer, 7 Cir., 149 F.2d 519, and later by the Supreme Court, June 10, 1946, 66 S.Ct. 1304, 1311.

The facts concerning Knauer's acts which led to his denaturalization are fully set forth in the opinion of this court in that case. They therefore need not, and will not, be repeated. It was judicially determined that Knauer actively participated in such subversive activities before and after taking the oath of allegiance to the United States; that it could not be said that he was attached to the principles of our Country, or that he had in good faith forsworn his allegiance to the Third Reich.

In the instant petition he predicates his right to remain in the United States on the fact that he is a "resident" of the United States and as such has a constitutional right to a judicial hearing, or at least an administrative hearing, and he may rely on his free speech prerogative before he may be deported. He contends that since active hostilities with his native land have ended and there is no longer possibility of danger to this Country from sabotage, he has all the civil rights granted a citizen by the United States Constitution. He also contends that the denaturalization proceedings were void because of the false testimony received in that case.

While petitioner does not rely solely upon the fact that the denaturalization decree was void, he seemingly realizes that he must avoid its consequences. As a result, he repeats the argument made on appeal in the denaturalization case to the effect that one of the Government's witnesses testified falsely. She was his secretary and took dictation from him when he was writing letters to Adolph Hitler and other Nazi leaders in Germany. He argues, as he did in the denaturalization case, that her testimony is false; that the judgment should be declared void because of her perjury, notwithstanding the Supreme Court in that case said:

"Important evidence implicating Knauer in promoting the cause of Hitler in this country was given by a Mrs. Merton. She testified that, prompted solely by patriotic motives, she entered the employ of Froboese in 1938 in order to obtain evidence against the Bund and its members. The truth of her testimony was vigorously denied by Knauer. But the District Court

believed her version, as did the Circuit Court of Appeals. And we are persuaded on a close reading of the record not only that her testimony was strongly corroborated but also that Knauer's attempts to discredit her testimony do not ring true."

Three questions arise. We do not elaborate our reasons for our opinion because none of said questions is deserving of elaborate discussion.

■ (1) We hold that petitioner may not attack the judgment entered in the denaturalization proceeding. Moreover, if he could, there would be no justification for a change in the finding that the witness told the truth, and petitioner did not, in said denaturalization proceeding.

■ (2) We also hold that petitioner had no right to remain in the United States or to dispute his deportation because he is a resident of the United States. Several reasons support this conclusion. He is an alien enemy. He obtained his naturalization decree through two material, false statements. He, in his oath, forswore all allegiance to Germany, when in fact he did not. He falsely gave assurance of allegiance to the United States, when secretly he was not attached but opposed to the principles of the Constitution of the United States.

He could not and did not acquire a residence "whose roots have become deeply fixed in this land," as discussed in the Bridges case. Bridges v. Wixon, 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103.

If residence plus "roots" be required to give him additional rights, we think our attention must be directed to the product of said roots. Some roots wither and die under most favorable conditions. Others grow to produce rank and noxious plants that are malodorous and distasteful. In the vast majority of cases we have found that transplanted roots develop into worthy citizenry. Others are just plain noxious weeds not entitled to continued cultivation and protection by our Government. They seek only the protection of our Constitution but recognize none of the obligations of loyal citizens. It affirmatively appears that petitioner's roots are still in Germany. Residence of one who fraudulently acquires citizenship here and who remains, as petitioner did, an alien in spirit, in thought and in action, does not confer rights as a resident, which are generously accorded to citizens.

Petitioner was an alien enemy. *He was not a loyal citizen residing in this country at any time*, certainly not when these proceedings were begun in 1945.

As we view it, denaturalization proceedings were a part, or a preliminary step, to these deportation proceedings. When the proceedings were begun, he was clearly an alien enemy doing what he could to frustrate the cause of the United States in the war in which we were at the time engaged. These facts appearing, petitioner was here by courtesy. His stay could be terminated at any time at the will of the Government.

■ (3) He was also deportable because he did not allege, nor could he show, any valid ground for remaining here. After the Congress passed a law limiting aliens' rights to remain in this Country, the Government's right to deport him was, we think, clear. As an alien, even though he was not an alien enemy, he had no right to remain here against the wishes of his host.

The stay of all aliens is a matter of privilege, granted and revocable at the will of the United States. An alien should show his right to be here. Courtesy to him should and will be shown. But the United States remains the sole judge of when his stay here shall be terminated. We think it quite elementary that the Government can not pursue a policy which permits an alien to enter the United States lawfully or unlawfully and conduct himself in a manner which provokes discord and when asked to leave the United States, refuse to do so and assert the rights of a citizen. If there be instances when roots growing out of residence here constitutes an exception—such as shown in the Bridges Case—petitioner did not bring himself within the exception.

The decree is affirmed.